# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

v.                                             Case No. 14-CR-81

**GARY RICHARDS and CHERYL RICHARDS**
        Defendants.

## DECISION AND ORDER

The government charged defendants Gary and Cheryl Richards with conspiracy and substantive violations of the Animal Welfare Act, 7 U.S.C. § 2156, based on their alleged participation in dog fighting. Gary filed motions to dismiss the indictment and for a bill of particulars, and Cheryl filed a motion to suppress along with a request for a Franks hearing, which Gary joined.[1] See Franks v. Delaware, 438 U.S. 154 (1978). The magistrate judge handling pre-trial proceedings in this case denied the motion for a bill of particulars and the request for a Franks hearing, and recommended denial of the motions to dismiss and suppress. Gary objects to the denial of his motion for a bill of particulars and the recommended denial of the motion to suppress. Cheryl objects to the recommended denial of the motion to suppress and the denial of a Franks hearing.

The district court may set aside a magistrate judge's order on a non-dispositive matter if it is contrary to law or clearly erroneous, Fed. R. Crim. P. 59(a), but reviews de novo recommendations on dispositive matters such as motions to dismiss or suppress evidence, Fed. R. Crim. P. 59(b). Because he has not objected to the recommended denial of his motion

---

[1] To avoid confusion, I will use the defendants' first names in this decision.

to dismiss, Gary has waived his right to review on that issue. Fed. R. Crim. P. 59(b)(2). I will deny that motion for the reasons stated by the magistrate judge. I address the objections below.

### I. BILL OF PARTICULARS

**A. Legal Standard**

Under Fed. R. Crim. P. 7(f), the court may direct the government to file a bill of particulars. The purposes of a bill of particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite for such purposes. United States v. Roman, 728 F.2d 846, 856 (7th Cir. 1984). To determine whether a bill is necessary, the court considers whether the indictment sufficiently apprises the defendant of the charges to enable him to prepare for trial. United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1991). The defendant is entitled to know only the offense with which he is charged, not all of the details on how it will be proved. See United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981). Further, a bill of particulars is not required if the defendant can obtain the necessary information through other means, such as discovery provided through an open file policy. Canino, 949 F.2d at 949.

**B. Analysis**

The magistrate judge denied Gary's motion, finding that the indictment provided sufficient details. For instance, the indictment sets forth ten specific acts in furtherance of the conspiracy, including Gary's establishment of a business, "Innercity Bulldogs," to further the

2

venture; his receipt of three dogs from other states in 1998, 2001, and 2004; his placement of advertising on November 4, 2007, and December 14, 2009; and the defendants' possession on October 19, 2011, of materials used to train, fight, treat, and destroy Pit Bulls. As to the substantive count, the indictment identifies seven dogs the defendants possessed for purposes of having them participate in an animal fighting venture. The magistrate judge further noted that Gary did not contend that the government failed to follow its open file policy; indeed, he stated that the discovery was voluminous.

In his objections, Gary argues that the alleged acts in furtherance provide him with insufficient notice. For instance, the indictment does not tell him whether and in what capacity the dogs he received in 1998, 2001, and 2004, were part of the charged conduct. Nor does the indictment explain how the advertisements he posted in 2007 and 2009 were in furtherance of dog fighting. Essentially, he seeks the evidentiary details of the government's case, which he has no right to discover through a bill of particulars. United States v. Glecier, 923 F.2d 496, 502 (7th Cir. 1991). Gary further complains that while the indictment alleges a conspiracy continuing from 1998 to 2014, it includes no acts in furtherance after October 2011. However, he cites no authority requiring the government to allege specifics acts for the entire period of a conspiracy. Nor does he address whether the discovery provides any additional information he needs to prepare a defense. In sum, Gary fails to show clear error in the magistrate judge's denial of a bill of particulars.

## II.  MOTION TO SUPPRESS

**A.    Legal Standards**

In determining whether to suppress evidence gathered pursuant to a search warrant,

3

the reviewing court asks whether the affidavit provided the issuing judicial officer with a "substantial basis" to find probable cause. United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Probable cause is far short of certainty; it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity or even a probability that exceeds 50 percent. United States v. Seiver, 692 F.3d 774, 777 (7th Cir. 2012). Determining whether probable cause exists requires a common-sense analysis of the facts available to the judicial officer who issued the warrant, and the reviewing court should defer to the issuing officer's conclusion that probable cause existed. United States v. Carroll, 750 F.3d 700, 703-04 (7th Cir. 2014). Where information from an informant is used to establish probable cause, relevant factors include: (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, and (4) the interval of time between the events and application for a warrant. United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005).

Search warrants enjoy a presumption of validity, but in some circumstances a defendant may be able to challenge the veracity of the warrant application. See Franks, 438 U.S. at 171. To obtain a so-called Franks hearing, the defendant must make a "substantial preliminary showing" that the warrant application contained a materially false statement made by law enforcement with deliberate or reckless disregard for the truth and that the false statement was necessary for the finding of probable cause. United States v. Williams, 718 F.3d 644, 649 (7th Cir. 2013). To obtain suppression, the defendant must prove by a preponderance of the evidence that (1) the affidavit contained material false statements or omissions, (2) these false statements or omissions were made with deliberate or reckless disregard for the truth, and (3)

these false statements or omissions were necessary to a finding of probable cause. Id.

**B.    Analysis**

The warrant for defendants' residence issued based on the October 17, 2011, application of Milwaukee police officer Ivan Wick. (R. 47-1.) Wick averred that a cooperating witness ("CW"), who wished to remain anonymous, provided him with information about dog fighting in Milwaukee. (R. 47-1 at 1 ¶ 4.) Wick provided information to assist the issuing judicial officer in assessing the CW's credibility (Id. at 2 ¶ 5), averring that the CW had previously been involved in dog fighting and in the past provided information that led to the recovery of evidence of dog fighting, including training equipment and at least one dog, and the arrest of at least one person. See, e.g., United States v. Johnson, 655 F.3d 594, 601 (7th Cir. 2011) ("[T]his informant was previously known to the government and had provided reliable information in the past."); see also United States v. Cruz-Rea, 626 F.3d 929, 939 (7th Cir. 2010) (stating that an informant's admission of involvement in criminal activity increases his credibility).

Over the next 17 paragraphs of his affidavit, Wick recounted the CW's highly detailed description of Gary's alleged involvement in dog fighting. (Id. at 2-4 ¶¶ 6-22.) The CW pointed out a specific residence where dog fighting occurred, identifying a resident named Gary as a participant in dog fighting events. (Id. at 2 ¶ 6-7.) The CW indicated that he had been to Gary's residence on multiple occasions for dog fights and other activities, including the viewing of videos depicting dog fights involving Gary and others. (Id. at 2 ¶ 8.) The CW described Gary, the truck Gary drove, and Gary's son, who also participated in dog fighting. (Id. at 2 ¶¶ 9-10.) The CW further described the dog fighting paraphernalia Gary kept at his residence, including a dog fighting ring in the basement (Id. at 2-3 ¶ 11), scales and tubs in the basement

5

(Id. at 3 ¶ 12), blue jump-suits worn by handlers kept in a first floor closet (Id. at 3 ¶ 13), and specific items used to kill or treat injured dogs kept in the basement (Id. at 3 ¶ 14). The CW also indicated that, as of about four months ago, Gary was keeping approximately four dogs in kennels in the backyard, two dogs in the basement, and additional dogs in the garage. In total, Gary had 10 or 11 dogs on the property at that time. (Id. at 3 ¶ 15.) The CW then described two of the dogs Gary fought. (Id. at 16.) The CW related that he had only known Gary for a matter of years but heard Gary talk about being involved in fighting dogs since the 1980s. (Id. at 3 at ¶ 17.) The CW further related that Gary talked about "studding" one of his dogs to another person involved in fighting. (Id. at 4 ¶ 18.) The CW also stated that he had been present for dog fights at Gary's house, and that bets going into thousands of dollars were made on the fights. (Id. at 4 ¶ 19.) The CW explained what while Gary was involved in fighting his own dogs, he was more of a promoter or host of such events. The CW described the nature of these events, including the usual number of attendees, the time they were held, and the manner in which dogs were transported into and out of the residence. (Id. at 4 ¶ 20-21.) Finally, the CW stated that Gary kept specific documentation of dog fighting inside his residence, including journals, logs, bracket sheets, and documents relating to the bloodlines of various fighting dogs. In addition to hard copies, Gary also kept records on his computers, which he used to access websites pertaining to dog fighting, including a site called "Peds." (Id. at 4 ¶ 22.) This level of detail, based on first-hand observation, provided a strong basis for the judicial officer's probable cause determination. See, e.g., United States v. Etchin, 614 F.3d 726, 736 (7th Cir. 2010) (stating that explicit and detailed information, based on first-hand observation, entitled tip to greater weight).

Wick then described his efforts to corroborate the CW's information. He spoke to

6

another officer, who indicated that the "Peds" website pertains to dog fighting. (Id. at 4 ¶ 23.) Wick also went to the site himself, locating a reference to dog fighting. (Id. at 5 ¶ 24.) Wick further spoke to two officers who had been inside the residence on an unrelated matter three months previously; they saw nothing of significance to this investigation, but they were focusing on something else, and they did not enter the backyard or garage. (Id. at 5 ¶ 26.) Through a search of records and reports, Wick established that the target residence was owned by Cheryl Richards, that Gary Richards listed this as his address, and that Gary Richards' photo matched the description of the person identified by the CW. (Id. at 6 ¶ 29-32-34.) Law enforcement also conducted surveillance of the residence, observing a truck that matched the vehicle described by the CW (Id. at 6 ¶ 35), what appeared to be a kennel-type structure in the back yard (Id. at 7 ¶ 37), and a "beware of dog" sign posted on the fence (Id. at 7 ¶ 37). Satellite images also revealed what appeared to be kennel-type structures behind the residence. (Id. at 7 ¶ 38.) While the police were unable to specifically corroborate the CW's allegations of illegal activity, their confirmation of even "innocent" details contributed to the probable cause showing. See Gates, 462 U.S. at 245; see also United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) ("Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct.").

In his objections, Gary argues that the CW failed to provide an appropriate "temporal nexus. While the witness claimed dogfights were held at the home, when they took place is a mystery. The only current information he provided was that they owned dogs – which is not an illegal act." (R. 56 at 4.) Age of inculpatory information is a relevant factor, but passage of time is less critical where, as here, the affidavit refers to facts that indicate ongoing continuous criminal activity. United States v. Pless, 982 F.2d 1118, 1125-26 (7th Cir. 1992). Further, the

7

warrant in this case sought evidence (e.g., business and computer records) that would not rapidly "dissipate or degrade." Seiver, 692 F.3d at 777. Finally, while owning dogs is not itself illegal, given the wealth of additional information set forth in the affidavit, the issuing judicial officer could consider the alleged presence of these animals as indicia of ongoing criminal activity.

In her objections, Cheryl notes that three months before the warrant issued officers entered her home and observed none of the evidence sought in the warrant. However, the affidavit explained that these officers were looking for a particular person and did not conduct a thorough search of the entire premises. Further, the CW explained that the dog fighting ring was collapsible and portable, meaning it could have been hidden from the officer's view as he walked through the basement area. Much of the other evidence would not be obvious to an officer searching a home for a person. Accordingly, the issuing judicial officer could have concluded that, given the other evidence submitted, this detail did not defeat probable cause. Cheryl also takes issue with the magistrate judge's reliance on the affidavit's use of the present tense, but like Gary she fails to show that the type of evidence sought in this case would quickly disappear.

Cheryl further objects to the magistrate judge's refusal to hold a Franks hearing. Before the magistrate judge, the defendants argued that Wick misled the issuing judicial officer by failing to disclose that the CW had four criminal convictions and two pending charges. However, the mere fact that a warrant affidavit omitted information about the informant's criminal background will not destroy the probable determination where, as here, the remainder of the affidavit establishes reliability. See United States v. Taylor, 471 F.3d 832, 840 (7th Cir. 2006). Finally, defendants do not even allege, much less present any evidence, that Wick

8

intentionally or recklessly omitted this information, which dooms their request for a Franks hearing.[2] See United States v. Souffront, 338 F.3d 809, 822 (7th Cir. 2003) ("The defendant must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard.") (internal quote marks omitted).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' objections are overruled, the magistrate judge's recommendation (R. 53) is adopted, and defendants' motions to dismiss (R. 41) and suppress (R. 43) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 19th day of January, 2015.

/s Lynn Adelman
LYNN ADELMAN
District Judge

---

[2] In her objections, Cheryl concedes that it is unknown whether Wick even knew about the CW's convictions. (R. 57 at 3.)

9